UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JAMES LAMONT FRAZIER, | ) Civil Action No.: 4:11-cv-3431-CMC-TER |
| Plaintiff, | ) |
| -vs- | ) |
| | ) **REPORT AND RECOMMENDATION** |
| COUNTY OF CHARLESTON; CHARLESTON COUNTY SHERIFF'S OFFICE; J. AL CANNON, JR, in his official capacity as Sheriff of Charleston County; CHARLESTON COUNTY DETENTION CENTER; MITCH LUCAS, in his official capacity as Administrator of the Charleston County Detention Center; CORIZON HEALTH, INC, f/k/a Prison Health Services, Inc; CAROLINA CENTER FOR OCCUPATIONAL HEALTH; and JOHN DOES 1-5; | ) |
| Defendants. | ) |

## I.   INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff also asserts state law claims for negligence and medical malpractice. Presently before the Court are Defendants County of Charleston's and Charleston County Detention Center's Motion to Dismiss (Document # 39), Defendant Corizon Health, Inc.'s first Motion to Dismiss (Document # 43), and Defendant Corizon Health, Inc.'s Motion to Dismiss, for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment (Document # 63).[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule

---

[1] Because Corizon submits an affidavit along with this Motion, the undersigned will treat it as a Motion for Summary Judgment and will refer to it as such herein.

73.02(B)(2)(d), DSC. Because these motions are potentially dispositive of certain claims, this Report and Recommendation is entered for review by the district judge.

## II.     PROCEDURAL HISTORY

This action was initially filed in the Court of Common Pleas, Charleston County and was subsequently removed to this court. Plaintiff has filed an original and three Amended Complaints in this action. Prior to Plaintiff filing the Third Amended Complaint, Defendants County and CCDC filed a Motion to Dismiss, arguing that they are not proper Defendants in this action. Defendant Corizon Health, Inc., (Corizon) also filed a Motion to Dismiss, arguing that Plaintiff's claims against it were subject to dismissal for Plaintiff's failure to file the affidavit of an expert witness contemporaneously with his Second Amended Complaint as required by S.C. Code Ann. § 15-36-100. Thereafter, with the consent of all Defendants, Plaintiff filed his Third Amended Complaint, which included the affidavit of an expert witness. Therefore, the deficiency asserted by Corizon in its Motion to Dismiss was remedied with the filing of the Third Amended Complaint. Accordingly, Defendant Corizon's first Motion to Dismiss (Document # 43) is moot.[2]

Corizon then filed its Motion to Dismiss, for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment, arguing that dismissal of Plaintiff's claims against it was proper for Plaintiff's failure to file the affidavit of a <u>qualified</u> expert witness as described in S.C. Code Ann. § 15-36-100(A).

## III.    FACTUAL ALLEGATIONS

At all times relevant to this action, Plaintiff was an inmate at the Charleston County Detention Center (CCDC), which Plaintiff alleges to be an agency of the County of Charleston (the

---

[2]The Third Amended Complaint does not remedy the deficiencies of the Second Amended Complaint as alleged by Defendants County and CCDC. Therefore, the undersigned will treat their Motion (Document # 39) as one to dismiss the Third Amended Complaint.

County). Plaintiff is currently an inmate with the Bureau of Prisons and is housed in Arkansas. Plaintiff was admitted to the custody of CCDC on or about December 2, 2008. Plaintiff was tested for tuberculosis during December of 2008. The test results were negative, showing he did not have tuberculosis upon entry into CCDC. Plaintiff alleges that multiple outbreaks of tuberculosis have occurred at CCDC from 2003 through the present and that the County, the Charleston County Sheriff's Office (CCSO) and the CCDC failed to act appropriately to prevent the spread of tuberculosis. Third Am. Comp. ¶¶ 1, 13-17.

In January, April, October, November and December of 2009, Plaintiff sought medical attention for chest pains, swelling in his right arm, pain radiating to his shoulder and chest, and problems with his right eye, including loss of vision, facial numbness and weakness on his right side. In December 2009, Defendants performed a regular annual skin tuberculosis test on Plaintiff, which came back with a positive result. Despite this result, Defendants took no action to test Plaintiff further for tuberculosis or to treat him for it. In January and February of 2010, Plaintiff continued to seek treatment for medical problems resulting from his undiagnosed tuberculosis infection which included progressive blindness in his right eye and the onset of vision problems and progressive blindness in his left eye. In mid-January 2010, Defendants performed a series of blood tests and a CAT scan on Plaintiff but failed to test Plaintiff further for tuberculosis or to treat him for tuberculosis. In February 2010, Plaintiff was first diagnosed with tuberculosis and began receiving treatment. Third Am. Comp. ¶¶ 18-26.

## IV.    STANDARDS OF REVIEW

### A.    Rule 12(b)(6), Fed.R.Civ.P.

A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has recently made clear that, under Rule 8 of the

Federal Rules of Civil Procedure, a plaintiff in any civil action must do more than make mere conclusory statements to state a claim. See <u>Ashcroft v. Iqbal</u>, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Twombly</u>, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Twombly</u>, 550 U.S. at 555.

Expounding on its decision in <u>Twombly</u>, the United States Supreme Court stated in <u>Iqbal</u>:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also <u>Bass v. Dupont</u>, 324 F.3d 761, 765 (4th Cir.2003).

**B.     Rule 56, Fed.R.Civ.P.**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. <u>Celotex</u>, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming

-4-

forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**V.      DISCUSSION**

    **A.      The County and CCDC's Motion to Dismiss**

The CCDC argues that it does not exist as a legal entity capable of suing or being sued as it is a building, not a person, and, thus cannot act under color of state law.     In a § 1983 civil rights action, a plaintiff must sufficiently allege injury through "the deprivation of any rights, privileges,

or immunities secured by the Constitution and laws" by a "person" acting "under color of state law." 42 U.S.C. § 1983; Monroe v. Page, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). A defendant in a § 1983 action must qualify as a "person." Inanimate objects such as buildings, facilities, and grounds cannot act under color of state law, and therefore the CCDC is not a "person" subject to suit under 42 U.S.C. § 1983. See Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D.Va.1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301(E.D.N.C.1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). In fact, this court has routinely held that the CCDC is not a person amenable to suit under § 1983. See e.g., Aiken v. Cannon, No. 2:10-cv-2664-RBH, 2011 WL 704662, *3 (D.S.C. Feb. 22, 2011 ) ("The CCDC is an entity, facility, or group of buildings, and not a 'person acting under the color of state law.'"); Odom v. Smalls, No, 3:09-0629-PMD, 2009 WL 3805594, *5 (D.S.C. Nov. 12, 2009) (order adopting recommendation that the CCDC is not a person amenable to suit under § 1983); Moore v. Charleston Cnty. Det. Ctr., No. 8:08–cv–00492, 2008 WL 2001959, at *3 (D.S.C. May 6, 2008) ("The Defendant Charleston County Detention Center is not a 'person' subject to liability under § 1983, so the pleadings fail to state a claim against Defendant.");Jones v. Ancrum, No. 0:06-2432-MBS-BM, 2007 WL 2891430, *7 (D.S.C. Sept. 27, 2007) (holding that the CCDC is entitled to dismissal because it is not a person amenable to suit under § 1983). Likewise here, dismissal is appropriate for Plaintiff's claims against the CCDC.

The County argues that the claims against it are also subject to dismissal because the CCDC is run by the CCSO and the county itself had no involvement in the Plaintiff's incarceration, evaluation, or treatment. While it may generally be true that detention centers are run by the sheriff of the county, see S.C.Code Ann. § 24–5–10 ("[t]he sheriff shall have custody of the jail in his

county"); Roton v. Sparks, 270 S.C. 637, 244 S.E.2d 214, 216 (S.C.1978) (holding that county detention centers are "jails" within the meaning of S.C.Code Ann. § 24–5–10), there are circumstances under which a County, as opposed to the Sheriff, may assume control over a detention center. See, e.g., Werts v. County of Richland, 2007 WL 914039, *3 (D.S.C. Mar. 23, 2007) (pointing to averments that the detention center was under the jurisdiction of Richland County and that medical services were provided to the inmates in the detention center pursuant to a contract between the medical provider and Richland County); Germany v. Alvin S. Glenn Detention Center, 2010 WL 2347073, *3 (D.S.C. May 14, 2010) (noting that Richland County operates the Richland County Detention Center). Therefore, based on the allegations in the Third Amended Complaint, this issue is not proper for dismissal under Rule 12(b)(6).

Accordingly, it is recommended that Motion to Dismiss (Document # 39) be granted as to Defendant CCSC and denied as to Defendant Charleston County.

### B.     Corizon's Motion for Summary Judgment

In his Third Amended Complaint, Plaintiff alleges that Corizon was "under contract . . . to provide medical care to Charleston County Detention Center inmates." Third Am. Compl. ¶ 8. Plaintiff also alleges that while he was an inmate at the CCDC, he was negligently provided health care by Corizon, causing him to contract tuberculosis and to suffer damages as a result of a delay in the diagnosis of the disease. Third Am. Compl. ¶ 13-31, 43-54. Plaintiff alleges a state law negligence claim for failing to protect Plaintiff from contracting tuberculosis and a state law medical negligence claim for failing to properly diagnosis and treat Plaintiff's tuberculosis.

In South Carolina[3], the South Carolina Noneconomic Damages Awards Act of 2005 (the Act)

---

[3]"The South Carolina Code sections relating to professional negligence claims are the substantive law of South Carolina." See Millmine v. Harris, 2011 No. 3:10–1595–CMC, WL 317643, at 2* (D.S.C. 2011) (citing Rotureau v. Chaplin, 2009 WL 5195968 at *6 (D.S.C 2009)

controls the filing of Complaints alleging professional negligence. Included in the Act is S.C. Code. Ann. § 15-36-100, which deals specifically with claims for professional negligence against medical providers employed by companies such as Corizon.[4] Plaintiff does not dispute that this Act is applicable to his medical malpractice claim.

South Carolina Code Ann. § 15–36–100 requires plaintiff in a medical malpractice action "to craft a viable complaint supported by the sworn testimony of a qualified expert witness." Ranucci v. Crain, 397 S.C. 168, 178, 723 S.E.2d 242, 247 (Ct.App. 2012). It also "sets forth requirements for the qualification of an expert witness-affiant and for the content of an expert witness's affidavit." Id. at 176, 723 S.E.2d at 246. "[S]ection 15–36–100 institutes . . . substantive requirements for the authorship and content of affidavits by expert witnesses . . . when filed with a complaint." Id. Along with his Third Amended Complaint, Plaintiff filed the Affidavit of Christopher H. Parsons, M.D. Parsons Aff. (attached as Ex. 1 to Third Am. Compl.). However, Corizon argues that the Parsons Affidavit fails to comply with § 15-36-100 because it fails to outline a single instance of negligence related to Corizon and because Dr. Parsons is not qualified to offer the opinion set forth in the Affidavit pursuant to the qualifications mandated by § 15-36-100(A).

Subsection (B) of § 15-36-100 requires Plaintiff to file "as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the

---

("Section 15-36-100 is part of the substantive law of South Carolina and is applicable in the case before the court.").

[4]Corizon notes that Plaintiff has not specifically named any employees of Corizon in his Third or Fourth Cause of Action. However, recognizing that a corporate entity cannot practice medicine, diagnose an illness, or establish a course of treatment, McMillan v. Durant, 312 S.C. 200, 439 S.E.2d 829 (1993), Corizon assumes that Plaintiff alleges that Corizon is negligent through the doctrine of respondeat superior. Corizon asserts that it reserves the right to pursue the defense that a corporate entity cannot practice medicine, and therefore be negligent, should its assumption be false.

affidavit." In his Affidavit, Parson avers the following:

4. I have reviewed medical records of Plaintiff, Mr. James Lamont Fraizer, regarding the medical care and treatment provided to him at the Charleston County Detention Center ("CCDC"). I have also reviewed records of his subsequent treatment at the Medical University of South Carolina Hospital.
5. It is my opinion, based on my examination of these records, to a reasonable degree of professional certainty, that those providing medical care to Mr. Fraizer and those with a duty to do so at the CCDC violated the standard of care by failing to diagnose and treat Mr. Fraizer's tuberculosis infection on several occasions including those described herein.
6. I understand from counsel that the Defendants are the entities responsible for Mr. Fraizer's care, so I will address those responsible and owing duties of care as "Defendants."
7. Following earlier requests for treatment of chest pain and numbness, Plaintiff requested treatment for problems with his right eye, facial numbness, and weakness on his right side during October and November 2009. The problems he complained of were a direct result of a tuberculosis infection and should have prompted Defendants to test Plaintiff for tuberculosis, but Defendants failed to do so.
8. In December 2009, Defendants performed a skin tuberculosis test on Plaintiff, which came back with a positive result. Despite this result, they took no action to test Plaintiff further for tuberculosis or to treat this infection empirically.
9. In mid-January 2010, Defendants performed a series of blood tests on Plaintiff. The results of the blood tests should have prompted Defendants to test Plaintiff for tuberculosis or to treat this infection empirically, but they failed to do so.
10. On January 20, 2010, Defendants performed a CT scan on Plaintiff. The results of the scan should have prompted Defendants to test Plaintiff further for tuberculosis or to treat this infection empirically, but they failed to do so.
11. Plaintiff was diagnosed and began receiving treatment for tuberculosis in February of 2010.
12. The Defendants' violations of the standard of care and the resulting delayed diagnosis and treatment of Mr. Fraizer's tuberculosis infection directly and proximately caused Mr. Fraizer's loss of vision and other conditions including pain and suffering.

Parsons Aff. ¶¶ 4-12.

Corizon submits the Affidavit of Donna Moore, the Vice President of Regional Operations at Corizon, who avers that Corizon's contract with the CCDC to provide health care services for its inmates ended on June 31, 2009. Moore Aff. ¶¶ 3, 6. Because the negligent acts identified by

Parsons in his Affidavit began in October and November of 2009, Corizon argues that the Affidavit fails to specify one negligent act or omission on the part of Corizon or its medical providers. Corizon also argues that Parsons fails to identify any negligent acts or omissions against Corizon arising out of a failure to protect Plaintiff from contracting tuberculosis or a failure to prevent the spread of tuberculosis at the CCDC.

In his Response, Plaintiff argues that § 15-36-100 requires only that the expert witness identify in his affidavit a negligent act or omission and the factual basis for such "based on the available evidence at the time of the filing of the affidavit." Thus, Plaintiff argues, Dr. Parsons' Affidavit is sufficient to meet this standard in that he avers that Plaintiff's medical providers "violated the standard of care by failing to diagnose and treat Mr. Fraizer's tuberculosis infection <u>on several occasions including those described herein</u>." Parsons Aff. ¶ 5 (emphasis added). Plaintiff argues that additional discovery is necessary to determine whether Corizon did indeed stop providing care on June 30, 2009, and whether any negligent acts or omissions occurred regarding Plaintiff's care while Corizon was responsible. Plaintiff also argues that his third cause of action, in which he alleges negligence for failure to prevent the spread of and protect Plaintiff from contracting tuberculosis, is not a professional negligence claim and, thus, § 15-36-100 is inapplicable to the third cause of action.

Corizon responds by arguing that Dr. Parsons had all of Plaintiff's medical records at the time he rendered his opinion as set forth in his Affidavit and, thus, if negligence had occurred prior to October or November 2009, Dr. Parsons could have opined in that respect at the time he filed his Affidavit. Corizon also notes that the Contract indicating that Defendant Carolina Center for Occupational Health began providing inmate medical services at CCDC on July 1, 2009, was included in the discovery Plaintiff provided to Corizon. <u>See</u> Contract (attached as Ex. B to Reply).

Therefore, Corizon argues, no further discovery is necessary and Plaintiff has failed to submit a sufficient affidavit. Corizon further argues that allowing additional discovery on the issue specifically required to be set forth in a pre-discovery affidavit runs contrary to the public policy underpinnings of § 15-36-100.

Corizon does not argue Dr. Parsons' Affidavit fails to specify at least one negligent act and the factual basis for such as required by statute; it argues that the negligent act or acts identified in the Affidavit are not attributable to it. Thus, the issue is not so much whether the Affidavit is sufficient as whether Corizon is liable for the negligent acts identified in the Affidavit. In support of its argument that it is not liable for the negligent acts identified in the Affidavit, Corizon presents evidence regarding when Corizon ended its provision of medical care to CCDC inmates. Plaintiff in entitled to conduct discovery on that issue.

Corizon also argues that Dr. Parsons' Affidavit is insufficient as to the claim that it was negligent for failing to prevent the spread of tuberculosis within the CCDC. It is undisputed that Dr. Parsons does not address this claim of negligence within his Affidavit. However, Plaintiff argues that this is simply a negligence claim, not a professional negligence claim, and, thus, it is not necessary to provide an Affidavit with respect to this issue. Neither party cites any authority for their respective positions. This cause of action is specifically pleaded as a negligence cause of action as opposed to medical malpractice or medical negligence. Indeed, the claim appears to raise general negligence as opposed to professional negligence related to diagnosis and treatment. Corizon fails to show that this negligence cause of action is governed by § 15-36-100. Also, § 15-36-100 requires only that the affidavit contain one negligent act and the factual basis for such. As discussed above, this condition has been met. Thus, Corizon's argument as to this cause of action is without merit.

Corizon also argues that Dr. Parsons is not qualified to opine against Corizon pursuant to §

15-36-100(A). Section 15-36-100(A) outlines the qualifications necessary in South Carolina for an expert to be authorized to provide an affidavit in support of an action for professional negligence. Specifically, subsection (A) provides that an "expert witness" means an expert who is qualified as to the acceptable conduct of the professional whose conduct is at issue and who:

> (1) Is licensed by an appropriate regulatory agency to practice his or her profession in the location in which the expert practices or teaches; and
> (2) (a) is board certified by a national or international association or academy which administers written and oral examinations for certification in the area of practice or specialty about which the opinion on the standard of care is offered; or
> (b) has actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given . . . .

S.C. Code Ann. § 15-36-100(A).

Dr. Parson avers,

> 2. I am licensed to practice medicine in the State of South Carolina and have been so licensed since 2006. I practice in the area of infectious diseases and currently an [sic] Assistant Professor of Medicine and Microbiology/Immunology at the Medical University of South Carolina. I became certified to practice in the specialty area of infectious diseases following completion of training within the Fellowship Training Program in Infectious Diseases and International Health at the University of Virginia School of Medicine. I received an M.D. degree from Case Western Reserve University in 1998 and completed an internship and residency in General Internal Medicine at Johns Hopkins Hospital in 2001.
> 3. As a result of my training and my experience in my practice, I am familiar with the standard of medical care in South Carolina regarding the diagnosis and treatment of tuberculosis.

Parsons Aff. ¶¶ 2-3.

Corizon argues that "the analysis to determine if a professional is qualified to opine in a professional negligence case is not if he or she is familiar with the diagnosis or treatment of a disease, but rather if he or she is qualified or experienced in the same field of medicine as the defendant," Motion p. 8, and because none of Corizon's medical professionals that worked at CCDC specialized in the area of Infectious Disease, Moore Aff. ¶ 7, Dr. Parsons is not qualified to render

an opinion on their conduct pursuant to § 15-36-100(A).

However, courts are to give the words of a statute their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation. <u>Auto Owners Ins. Co. v. Rollison</u>, 378 S .C. 600, 609, 663 S.E.2d 484, 488 (2008). Section 15-36-100(A)(2)(a) states that an expert must be "board certified by a national or international association or academy which administers written and oral examinations for certification <u>in the area of practice or specialty about which the opinion on the standard of care is offered</u>." (Emphasis added). The statute does not require that the expert be certified in the same area of practice as the professional whose conduct is at issue. Thus, Corizon's argument regarding Dr. Parsons' qualifications is without merit.

In sum, because Dr. Parsons' Affidavit has identified at least one negligent act or omission claimed to exist and the factual basis for each claim and because Dr. Parsons meets the requirements to qualify as an expert under S.C. Code Ann. § 15-36-100, summary judgment is not appropriate.

## VI.   CONCLUSION

For the reasons discussed above, it is recommended that Defendants County's and CCDC's Motion to Dismiss (Document # 39) be granted as to Defendant CCDC and denied as to Defendant County, Defendant Corizon's first Motion to Dismiss (Document # 43) be marked as moot, and Defendant Corizon's Motion for Summary Judgment (Document # 63) be denied.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 18, 2013
Florence, South Carolina