UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JAMES LAMONT FRAIZER, ) <br> ) <br> Plaintiff, ) <br> ) <br> -vs- ) <br> ) <br> ) <br> COUNTY OF CHARLESTON; ) <br> CHARLESTON COUNTY SHERIFF'S ) <br> OFFICE; J. AL CANNON, JR., in His ) <br> Official Capacity as Sheriff Of Charleston ) <br> County; CHARLESTON COUNTY ) <br> DETENTION CENTER; MITCH LUCAS, ) <br> in His Official Capacity as Administrator of ) <br> the Charleston County Detention Center; ) <br> CORIZON HEALTH, INC; f/k/a Prison ) <br> Health Services, Inc.; CAROLINA CENTER ) <br> FOR OCCUPATIONAL HEALTH, LLC ) <br> AND JOHN DOES 1-5 ) <br> ) <br> Defendants. ) <br> _____ ) | Civil Action No.: 4:11-cv-3431-DCN-TER <br><br><br><br><br> **REPORT AND RECOMMENDATION** |

**I.     INTRODUCTION**

This action arises out of Plaintiff's contraction of tuberculosis while he was incarcerated at the Charleston County Detention Center (CCDC). Plaintiff alleges that Corizon was negligent in failing to prevent the spread of tuberculosis at CCDC.[1] Presently before the Court is Defendant Corizon Health, Inc. f/k/a Prison Health Services, Inc.'s (Corizon[2]) Motion for Summary Judgment

---

[1] Plaintiff also alleged a cause of action for medical malpractice against Corizon, but withdrew the claim as to Corizon only in his Response. Pl. Resp. to Corizon Motion p. 2.

[2] Corizon Health, Inc. is the successor by merger to Prison Health Services. It was Prison Health Services that contracted with Charleston County to provide medical care at CCDC at the relevant time period. However for ease of reference, the undersigned will refer to this Defendant as Corizon uniformly.

(Document # 141). A hearing via telephone conference was held on August 7, 2014. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.

## II.     FACTS

Plaintiff's most recent incarceration at CCDC began on December 2, 2008. Third Am. Comp. ¶ 13. Corizon does not dispute that Plaintiff tested negative for tuberculosis upon entry to CCDC. Plaintiff does not dispute that Corizon's contract to provide healthcare services to the inmates at CCDC ended on June 30, 2009. Pl. Resp. to Corizon's Requests to Admit 1, 2, and 4 (Ex. A to Corizon's Motion); Cash Dep. pp. 84-85 (Ex. B to Corizon Motion); Moore Aff. ¶ 6 (Ex. C to Corizon Motion).

During October, November and December of 2009, Plaintiff requested medical treatment several times for problems with his right eye, including loss of vision, facial numbness, and weakness on his right side. Third Am. Comp. ¶ 20. In December of 2009, Plaintiff was given an annual tuberculosis skin test, which had a positive result. Id. at ¶ 22. In February of 2010, Plaintiff was diagnosed with neurotuberculosis.

Plaintiff's medical expert, Christopher Parsons, M.D., opines that Plaintiff contracted tuberculosis by "inhaling tuberculosis in the air that was there due to coughing by another inmate who was infected." Parsons Jan. 15, 2013 Dep. (Parsons Dep. I) p. 77 (Ex. A to Pl. Response). Parsons also testified generally about the spread of tuberculosis in correctional settings:

> Prisons generally have high incidences of TB infection, which is to say new positive PPD tests. Much higher than the general population. And the reason for that is overcrowding. And so the prisoner are, by and large, if they are amongst themselves throughout the day, then it's logical to consider the fact that the TB that one acquires is probably from another prisoner, because that's who they are near.

Parsons Dep. I p. 77; accord Parsons Jan. 16, 2013 Dep. (Parsons Dep. II) pp. 24, 29 (Ex.B to Pl. Response).  However, Dr. Parsons testified that he is unable to say with a reasonable degree of medical certainty that Plaintiff contracted tuberculosis (1) before July 1, 2009, (2) from an inmate that entered CCDC before July 1, 2009, (3) as a result of any failure of Corizon to protect him from other individuals or (4) as a result of any negligent failure of Corizon to prevent the spread of tuberculosis at CCDC.  Parsons Trial Dep. (Parsons Dep. III) pp. 88-89 (Ex. G to Corizon's Motion).

Donna Moore, Regional Vice President of Corizon with responsibility for CCDC, and Dr. Kathryn Arden, the DHEC regional physician who handles medical management of tuberculosis cases in Charleston County, agree that tuberculosis is a serious concern in the correctional setting. Moore Dep. p. 73 (Ex. C to Pl. Response); Arden Dep. p. 60 (Ex. D to Pl. Response).  In correctional institutions, persons with active, contagious tuberculosis are required to be isolated in negative-pressure cells, which do not share air with the remainder of the facility.  Moore Dep. p. 65.  At the time relevant to this cause of action, CCDC did not have negative-pressure cells, so all inmates identified as having potentially contagious tuberculosis were to be sent to the hospital for isolation. Moore Dep. pp. 65-66.

The record reveals that at least one inmate, known as A.M., was unisolated and present in the CCDC population with tuberculosis symptoms, including coughing up white and green phlegm, in late 2009.  Clinical Nursing Evaluation dated Jan. 6, 2010 (Ex. E to Pl. Response).[3]  A.M. became contagious in July or August of 2009.  Arden Dep. I pp. 33, 35-36, 37; accord Clinic Note dated Aug. 7, 2009 (Ex. G to Pl. Motion).  A.M. remained present in the CCDC population and symptomatic

---

[3]This Clinical Nursing Evaluation indicates that A.M. was seen on January 6, 2010, and had been coughing up white and green phlegm for the past three months.  Id.

until he was transferred to Berkeley County in January of 2010. Arden Dep. I pp. 41, 45. Dr. Arden also opined that A.M. also contracted tuberculosis at CCDC; he tested negative on entry. Arden Dep. 39; accord History & Physical Exam dated Mar. 4, 2009 (Ex. I to Pl. Response). Because it can take months after exposure for an otherwise healthy individual to develop pulmonary tuberculosis symptoms, Arden Dep. I pp. 36-37, Plaintiff argues that A.M. was mostly likely infected after his entry to CCDC but during Corizon's contract period. Dr. Arden suspects that an unidentified infectious tuberculosis case was present at CCDC at that time, which infected A.M. Arden Dep. I pp.160-61.

Dr. Arden testifies that Plaintiff "probably" contracted tuberculosis from A.M.[4] because A.M. "was the other case there." Arden Dep. I pp. 49-50, 83-84; Arden & Young presentation slides at 1187 (Ex. F to Pl. Response). She goes on to state "I don't know that we ever had a good, solid, epi-link putting them together, but we did hypothesize that they had been together at some point." Arden Dep. I p. 50.[5] However, she later testifies, "if you can show they've never been in contact, then, yeah, [Plaintiff] probably didn't get it from [A.M.]." Arden Dep. II p. 138. Corizon presents evidence that A.M. never had contact with Plaintiff. Captain Michael Tice avers that he has conducted an exhaustive electronic records search of every location that Plaintiff and A.M. were during their stays at CCDC, which goes beyond the normal contact search, which only pulls the names of inmates who have been housed together in a cell or location (such as medical), and they never had contact. Tice Aff. ¶¶ 4-6, 12 (Ex. O to Corizon Reply). Tice avers that Plaintiff and A.M.

---

[4]Other secondary cases of tuberculosis at CCDC were traced to A.M. Arden & Young presentation slides at 1179, 1203; DHEC Cluster Analysis (Ex. H to Pl. Response).

[5]Dr. Arden's deposition reveals there was some question about whether the contact records she reviewed were complete or accurate. Arden Dep. I pp. 51-53

were not housed in the same housing unit and, thus, would not have had recreational time or meals together. Tice Aff. ¶ 13. They were not on any work details together as A.M. was never an inmate worker, they were never checked out of the facility at the same time, and they were never transported in the same vehicle together. Tice Aff. ¶¶ 14-16. Dr. Arden testifies that tuberculosis "is not something you catch in the hallway and it's not something you catch from spending one night in a cell with somebody else. It something you catch, probably after spending substantial time" with an infected inmate. Arden Dep. II p. 69.

Under relevant industry standards, its contract with Charleston County, and its own policies and procedures, Corizon was required to implement two lines of defense against tuberculosis at CCDC. Moore Dep. pp. 40-46; Agreement for Inmate Medical Services dated Jan. 9, 2007 (Ex. J to Pl. Response); Policies dated Nov. 1, 2008. The first was a receiving screening of all inmates upon intake and before they were placed in CCDC population. The second was a tuberculin skin test, also called a TST or PPD, which was to be placed on all inmates within 7-14 days of admission and read 48 to 72 hours later. Id.

When an inmate enters CCDC, the standard of care for a medical provider requires the provider to ask five questions that target tuberculosis symptoms: whether the inmate is experiencing weight loss, night sweats, fever, a persistent cough for longer than two weeks, or coughing blood. Pl. Intake Receiving and Screening Form (Ex. A to Corizon Reply); Arden Apr. 29, 2014 Dep. (Arden Dep. II) pp. 121-123 (Ex. B to Corizon Reply). Thus, a medical provider's ability to prevent inmates with tuberculosis from entering the detention center is dependent largely on the accuracy of the inmate's reported symptoms. Arden Dep. II pp. 121-23.

Dr. Arden testified that during the initial screening phase, inmates with tuberculosis can enter

the CCDC without detection through no fault of the medical provider or without any violation of the standard of care, by failing to accurately report symptoms and then leaving the facility prior to the end of the window to place a tuberculosis skin test. Arden Dep. II pp. 125-26. As a result, DHEC expects one to two cases of tuberculosis to exist at CCDC each year. Arden Dep. II pp. 120-21; see also Eiser Dep. pp. 49-50 (stating that the existence of tuberculosis in a detention facility alone is not necessarily indicative of negligence).

Moore testified that the receiving screening had two purposes: to identify inmates who have tuberculosis for treatment and to help prevent tuberculosis from spreading to other inmates. Moore Dep. pp. 132-33. Moore further testified,

> Because of the correctional environment and often times the overall poor health of the inmates, it's really important that the standards be observed and that [] Corizon be vigilant for any outbreak of infectious disease. So if we had – had not been monitoring the inmates coming in for signs, symptoms of TB and applying the TB skin test, then, yes, we could contribute to the – the outcome with [Plaintiff].

Moore Dep. p. 134. Moore[6] was aware of multiple missed screenings on several days while she was overseeing Corizon's medical care at CCDC, Moore Dep. pp. 48, 94-95, and admitted that these failures to screen could result in an inmate with active tuberculosis entering CCDC. Moore Dep. pp. 98-99. However, she did not concede that Corizon failed to meet its obligations to properly test all inmates for tuberculosis. Moore Dep. p. 134. Missed screenings were clear violations of the relevant standards. Eiser Dep. pp. 25-26 (Ex. L to Pl. Response).

Email messages sent by Corizon personnel reveal nine days between December 2008 and

---

[6]Moore became regional vice president with responsibility for CCDC in January of 2008. Moore Dep. p. 10. Her job was to "get[] the facility turned around" because it had recently been placed on probation by its accrediting agency for failure to meet essential standards of care. Moore Dep. p. 78.

May 2009, on which at least 108 screenings were missed upon intake. Moore Dep. p. 48; Emails (Ex. O to Pl. Response). However, it is undisputed that Corizon employees were not responsible for moving inmates out of the intake area and into the general population. Moore testified that correctional officers would get anxious about inmates being in the intake area, and would go ahead and put the inmates in cells even though they had not yet been screened. Moore Dep. 48, 93-94. Plaintiff argues not that Corizon employees were negligent for prematurely moving the inmates prior to screening, but because they were short-staffed such that they could not conduct the screenings in a timely manner. Moore admits that "staffing was always difficult there." Moore Dep. pp. 80-81. An email message from a corrections officer states that the nursing staff "sit[s] in that corner doing nothing (reading or constantly smoking) and won't tell [the officers] that they need to screen or someone that was missed." E-mail dated Jan. 8, 2009 (Ex. M to Pl. Response).

Corizon notes that in 2008 and 2009, a total of 48,343 inmates entered CCDC and received an intake screening, Monthly Statistical Report (Ex. D to Corizon Reply), and, thus, the 108 missed screenings identified by Plaintiff account for .22% of the screenings performed during those two years. The only evidence in the record regarding these 108 inmates whose screenings were initially missed indicates that none of them contracted active tuberculosis or had contact with Plaintiff or A.M. Dawn Fraizer Dep. pp. 70-71 (Ex. E to Corizon Reply)[7], CCDC Contact Lists, DHEC Contact Lists, and Intake Screening Emails (Exs. F, G and H, to Corizon Reply).

Although there is no specific evidence of any case of active, contagious tuberculosis at

---

[7] While Plaintiff argues that Dawn Fraizer's testimony on this is based solely on her memory and, thus, a question of fact exists as to her credibility, he fails to present any evidence, direct or circumstantial, to create an issue of fact. Furthermore, even if an issue of fact did exist, it would not be material because of the additional evidence that these inmates did not have contact with Plaintiff or A.M.

CCDC during Corizon's contractual period after Plaintiff's admission date, Plaintiff contends there is evidence (Ex. P to Pl. Response) of inmates at CCDC with potentially active tuberculosis during Corizon's tenure: (1) C.N., who had a positive PPD and was symptomatic in January of 2009, for which, according to Moore, he should have been reported to DHEC for treatment, Moore Dep. 65; (2) A.G.B, who had a positive PPD, but was not chest x-rayed for a month after his booking in March of 2009, even though Moore testified that it was Corizon's policy to perform such an x-ray within seven days of a positive PPD, Moore Dep. p. 36; and (3) an unidentified male who had a positive PPD and a questionable chest x-ray who was "on TB treatment" in March of 2009. There is no evidence that any of these potential cases of tuberculosis ever developed into active, contagious tuberculosis. Furthermore, there is no evidence that these inmates had contact with A.M. or Plaintiff.

### III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and

inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.   DISCUSSION

Plaintiff alleges that Corizon, along with all other Defendants, was negligent in failing to protect Plaintiff from contracting tuberculosis by failing to enact proper policies and procedures and failing to properly train, monitor or follow those policies. Third Am. Comp. ¶¶ 43-47. Corizon moves for summary judgment, arguing that Plaintiff fails to present sufficient evidence to create a dispute of fact as to causation.

Negligence is not actionable unless it proximately causes the plaintiff's injuries. Bishop v. S.C. Dep't of Mental Health, 331 S.C. 79, 88, 502 S.E.2d 78, 83 (1998). A negligent act or omission

proximately causes an injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have occurred. Crolley v. Hutchins, 300 S.C. 355, 357, 387 S.E.2d 716, 717 (Ct.App.1989).

Viewing the facts in the light most favorable to Plaintiff, Plaintiff tested negative for tuberculosis upon his entry to CCDC in December of 2008. Thus, he contracted tuberculosis while he was incarcerated at CCDC. Another inmate, A.M., who also tested negative for tuberculosis upon entry to CCDC, subsequently tested positive, and, thus, must have contracted it from an unidentified infectious tuberculosis case. A.M. was unisolated in the CCDC population with tuberculosis symptoms during the second half of 2009, and became contagious in July or August of 2009. He remained unisolated until January of 2010. Plaintiff began exhibiting symptoms of tuberculosis in October of 2009. In December of 2009, Plaintiff's annual tuberculosis skin test had a positive result. Because it can take months from the time of exposure for an otherwise healthy individual to develop symptoms, A.M. likely contracted tuberculosis before Corizon's contractual obligations ended on June 30, 2009, meaning the unidentified infectious tuberculosis case was in the CCDC population during Corizon's contractual period.

With respect to the detection of tuberculosis, Corizon was required was to conduct a receiving screening of all inmates upon intake and before they were placed in CCDC population. This initial screening consisted of asking the inmate questions regarding possible tuberculosis symptoms. Within 7-14 days of admission, the inmate was to receive a tuberculin skin test. Between December 2008 and May 2009, at least 108 initial screenings were missed (but later conducted) by Corizon's nurses. In addition, there were at least three inmates with potentially active

tuberculosis who were not reported to DHEC during Corizon's tenure.[8]

Thus, Plaintiff's theory of its case against Corizon is that, because of Corizon's negligence in failing to screen all inmates prior to their entry to the CCDC population, an unidentified infectious tuberculosis case entered CCDC's population, infected A.M, who then infected Plaintiff.

Corizon argues that, even assuming the facts cited by Plaintiff are true, additional evidence reveals that Plaintiff's theory fails. Corizon presents evidence that an inmate with tuberculosis can enter a corrections facility even when the initial screening is done due to the fact that the screening relies upon the inmate accurately reporting his symptoms. Thus, such an inmate could fail to disclose his tuberculosis symptoms, be placed into the CCDC population and then infect another inmate prior to the tuberculosis skin test being done.[9] In addition, there is no evidence that any of the 108 inmates who received a delayed screening or the three inmates Plaintiff identifies as having potentially active tuberculosis were ever diagnosed with tuberculosis. Further, there is no evidence that any of the 108 delayed-screening inmates or the three inmates with potentially active tuberculosis had contact with Plaintiff or A.M. Plaintiff never had contact with A.M. A review of the list of inmates Plaintiff was known to have had contact with during his incarceration who were ever known to have active, contagious tuberculosis were admitted to CCDC <u>after</u> Corizon's contract ended. Eiser Dep. p. 85 (Ex. C to Corizon Reply).

Corizon argues that Plaintiff fails to present facts sufficient to establish causation because

---

[8] The parties dispute the DHEC reporting requirements with respect to these cases. Nevertheless, there is no evidence that these three inmates had contact with Plaintiff or A.M.

[9] Dr. Arden also testified about pleural tuberculosis. Ten percent of pleural tuberculosis cases do not result in a positive skin test. This type of tuberculosis could later develop into active, contagious pulmonary tuberculosis while the inmate is in the detention center. Arden Dep. II pp. 115-117, 129-30.

he has no testimony from a medical expert that any negligence on the part of Corizon for failing to properly screen for or prevent the spread of tuberculosis caused Plaintiff to contract the disease. Plaintiff's medical expert, Dr. Parsons, testified that he is unable to say with a reasonable degree of medical certainty that Plaintiff contracted tuberculosis (1) before July 1, 2009, (2) from an inmate that entered CCDC before July 1, 2009, (3) as a result of any failure of Corizon to protect him from other individuals or (4) as a result of any negligent failure of Corizon to prevent the spread of tuberculosis at CCDC. Parsons Trial Dep. (Parsons Dep. III) pp. 88-89 (Ex. G to Corizon's Motion).

Plaintiff argues that he can prove causation by circumstantial evidence and points to Kapuschinsky v. U.S., 248 F.Supp. 732 (D.S.C. 1966). Kapuschinsky, involved a newborn baby whose medical experts opined the baby most likely contracted a staph infection from a specifically, identified nurse who had a similar staph infection and who had attended to the infant plaintiff while she was in the premature nursery. The court held that the plaintiff did not have to present conclusive evidence that the plaintiff and the nurse had the same strain of the staph virus and that the plaintiff could use circumstantial evidence to prove the method of actual transmittal. Id. at 742. However, Kapuschinsky is distinguishable from the present case. In Kapuschinsky, there was an identifiable source of the infection and undisputed evidence that the source came into contact with the plaintiff. Here, there is no specific, identifiable source of the tuberculosis and, of the tenuous evidence of possible sources, there is no evidence that any of those sources ever came in contact with Plaintiff. Thus, his reliance on Kapuschinski is misplaced.[10]

---

[10] Plaintiff also relies on Castillo v. Solano County Jail, No. 2:08-CV-3080, 2011 WL 3584318 (E.D. Cal. Aug. 12, 2011), to support his argument that he has presented sufficient evidence to create a dispute of fact as to causation. However, as with Kapuschinsky, in Castillo, the plaintiff was able to present testimony that he was celled with an inmate diagnosed with a disease five days before the plaintiff was diagnosed with the same disease. Id. at *9, *17.

Simply put, Plaintiff's evidence is insufficient to show that his contraction of tuberculosis was proximately caused by Corizon's negligence.  "Proximate cause requires proof beyond just the act or omission in question and concerns whether it is the 'but for' cause of the plaintiff's injuries . . . ."  Grier v. AMISUB of South Carolina, Inc., 397 S.C. 532, 538, 725 S.E.2d 693, 697 (2012) (citing Bishop v. S.C. Dep't of Mental Health, 331 S.C. 79, 88-89, 502 S.E.2d 78, 83 (1998)).  The evidence presented by Plaintiff is insufficient to show that Corizon's failure to screen inmates is the "but for" cause of his contraction of tuberculosis.  Therefore, summary judgment is appropriate.[11]

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Corizon's Motion for Summary Judgment (Document # 141) be granted.

                                         s/Thomas E. Rogers, III
                                         Thomas E. Rogers, III
                                         United States Magistrate Judge

August 7, 2014
Florence, South Carolina

---

[11] Plaintiff also argues that Corizon's spoliation of evidence prevented him from presenting direct evidence of causation and that he will be entitled to an adverse inference at trial.  However, "[a]n adverse inference is insufficient . . . to replace evidentiary proof necessary to support a claim."  Shilan v. Shoppers Food Warehouse Corp., 2014 WL 1320102, *7 (D.Md. March 31, 2014). Instead, "unexplained and intentional destruction of evidence by a litigant gives rise to an inference that the evidence would have been unfavorable to his cause, but would not in itself amount to substantive proof of a fact essential to his opponent's cause."  Id.  Thus, this recently-raised claim of spoliation is insufficient to defeat summary judgment.