# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| JAMES LAMONT FRAZIER, ) | |
| ) | |
| Plaintiff, ) | No. 4:11-cv-3431-DCN |
| vs. ) | |
| ) | **ORDER** |
| COUNTY OF CHARLESTON; ) | |
| CHARLESTON COUNTY SHERIFF'S ) | |
| OFFICE; J. AL CANNON, JR., *in his* ) | |
| *official capacity as sheriff of Charleston* ) | |
| *County*; CHARLESTON COUNTY ) | |
| DETENTION CENTER; MITCH LUCAS, ) | |
| *in his official capacity as administrator of* ) | |
| *the Charleston County Detention Center* ) | |
| CORIZON HEALTH, INC, *f/k/a Prison* ) | |
| *Health Services, Inc.*; CAROLINA ) | |
| CENTER FOR OCCUPATIONAL ) | |
| HEALTH, LLC; and JOHN DOES 1-5, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's Report and Recommendation ("R&R") that this court grant defendant Corizon Health, Inc.'s ("Corizon") motion for summary judgment. For the reasons set forth below, the court rejects the R&R and denies Corizon's motion for summary judgment.

## I.   BACKGROUND[1]

Plaintiff James Lamont Frazier ("Frazier") is a former inmate at the Charleston County Detention Center ("CCDC"). Compl. ¶ 13. Corizon, formerly known as Prison Health Services, Inc. ("PHS"), is an independent medical provider that contracted to provide health care services to inmates at CCDC between July 1, 2008 and June 30, 2009. Def.'s Mot. for Summ. J. 2. Under its contract with CCDC, Corizon conducted

---

[1] The facts are considered and discussed in the light most favorable to Frazier, the party opposing summary judgment. See Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

1

tuberculosis screening of all inmates at CCDC.  Pl.'s Resp. 5.  Corizon conducted an initial screening process prior to each inmate's admission into CCDC.  Id.  During the initial screening process, medical staff asked each inmate a set of questions relating to the common symptoms of tuberculosis.  Def.'s Mot. Ex. A.  Between seven to fourteen days after admission, inmates received a tuberculin skin test.  Pl.'s Resp. Ex. J.  During Corizon's contract period, Corizon failed to initially screen 108 inmates prior to their admission into the general prison population.  Pl.'s Resp. 7, Ex. O.

Frazier entered CCDC custody on or about December 2, 2008.  Third Am. Compl. ¶ 13.  That same month, Frazier tested negative for tuberculosis.  Id. ¶ 14.  In January 2009, Frazier sought medical treatment for chest pains and in April 2009 sought medical attention for swelling and pain in his right arm.  Id. ¶¶ 18-19.  In October 2009, Frazier began to exhibit symptoms of tuberculosis and sought medical attention for various eye and facial ailments.  Id. ¶ 20.  In December 2009, Frazier tested positive for tuberculosis during an annual tuberculin skin test.  Id. ¶ 22.  In February 2010, Frazier was diagnosed with tuberculosis and began receiving treatment.  Id. ¶ 26.  It is unclear exactly when Frazier was infected with tuberculosis.  Frazier's medical expert, Christopher Parsons, M.D. ("Dr. Parsons"), submits that Frazier contracted tuberculosis by "inhaling tuberculosis in the air that was there due to coughing by another inmate who was infected."  Pl.'s Resp. Ex. A, at 77.  According to Dr. Parsons, tuberculosis poses a higher risk in prison systems than in the general population because of overcrowding.  Id.

Another inmate, known as A.M., also tested negative for tuberculosis upon entry into CCDC, but contracted tuberculosis during his incarceration at CCDC.  Pl.'s Objections 4.  A.M. became contagious in July or August 2009.  Id. at 3.  Because it takes

months after exposure to develop symptoms, Dr. Kathryn Arden ("Dr. Arden"), the South Carolina Department of Health and Environmental Control ("DHEC") physician responsible for medical management of tuberculosis in the Lowcountry, suspects that A.M. was most likely infected by an unidentified infectious tuberculosis case prior to the end of Corizon's contract with CCDC on June 30, 2009. Id. at 3-4; Arden Dep. 36:14-37:5, 160:20-161:5. A.M. remained in the CCDC population until January 2010, when he was transferred out of CCDC. Id. During Corizon's contract period, there were at least three other inmates with potentially active tuberculosis that were not reported to the DHEC. Pl.'s Resp. 7-8; Moore Dep. 132:8-133:7. The known infected inmates who had contact with Frazier contracted tuberculosis after Corizon's contract period ended. Def.'s Mot. Ex.C, Eiser Dep. 85:16-85:21.

Frazier filed the present action on November 7, 2011 in the Charleston County Court of Common Pleas. Defendants County of Charleston ("Charleston County"), Charleston County Sheriff's Office ("Sheriff's Office"), CCDC, Mitch Lucas ("Lucas"), and Charleston County John Does ("John Doe defendants") filed a notice of removal on December 16, 2011. Frazier filed a second amended complaint on April 17, 2012 and a third amended complaint on May 9, 2012, asserting constitutional claims pursuant to 42 U.S.C. § 1983, as well as state law negligence and medical malpractice claims. Frazier alleges that Corizon negligently failed to prevent the spread of tuberculosis in CCDC, causing him to contract tuberculosis while incarcerated.[2] Pl.'s Resp. 1. Specifically, Frazier asserts that Corizon's numerous failures—including the failure to establish adequate prevention policies, the failure to train and monitor staff, and the failure to

---

[2] Although Frazier initially alleged a medical malpractice action against Corizon, Third Am. Compl. ¶¶ 48-54, Frazier withdrew that claim as to Corizon. Pl.'s Resp. 2. Therefore, the only remaining claim against Corizon is for negligence.

enforce existing policies—constitute a breach of its duty to prevent both the spread of tuberculosis at CCDC and protect Frazier from contracting tuberculosis. Third Am. Compl. ¶¶ 43-47.

Corizon filed the instant motion for summary judgment on December 2, 2013.[3] Frazier responded to Corizon's motion for summary judgment on May 23, 2014. The magistrate judge issued an R&R on August 7, 2014, recommending that this court grant Corizon's motion for summary judgment. Frazier filed objections to the R&R on August 25, 2014. Corizon filed a response to Frazier's objections on September 5, 2014. This matter is now ripe for the court's review.

## II. STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted if the movant shows that there is no genuine dispute as to any issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

---

[3] Corizon previously filed a motion for summary judgment which was denied without prejudice to renew after the close of discovery.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor.  Id. at 255.  "Since its impact is rather drastic, a summary judgment must be used with due regard for its purposes and should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues."  Watson v. S. Ry. Co., 420 F. Supp. 483, 486 (D.S.C. 1975).  A district court should not grant summary judgment "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under the circumstances."  Campbell v. Hewitt, Coleman & Assocs., 21 F.3d 52, 55 (4th Cir. 1994).

### III. DISCUSSION

Frazier objects to the R&R on two grounds, asserting that the magistrate judge: (1) improperly refused to permit circumstantial evidence of causation to create a genuine issue of material fact; and (2) erred in holding that Frazier failed to create a genuine issue of material fact as to whether Corizon's negligence caused Frazier to contract tuberculosis.  Pl.'s Objections 9-14.  Both objections relate to the primary question at issue in this summary judgment motion—whether there is sufficient evidence in the record that a reasonable jury could find that Corizon's alleged negligence caused Frazier to contract tuberculosis.  The court will first discuss the law of negligence in South Carolina generally and then address Frazier's objections concurrently, as they both involve the sufficiency of the evidence relating to causation.

To prevail in a negligence action under South Carolina law, a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached its duty by a negligent act or omission, (3) the defendant's negligent act or omission actually and proximately caused the plaintiff's injury or damages, and (4) the plaintiff suffered injury or damages. Andrade v. Johnson, 588 S.E.2d 588, 592 (S.C. 2003). Proximate causation is a two-step analysis, requiring proof of both cause-in-fact and legal causation. Oliver v. S.C. Dep't of Highways & Pub. Transp., 422 S.E.2d 128, 130 (S.C. 1999).

"Causation in fact is proved by establishing the injury would not have occurred 'but for' defendant's negligence." Bramlette v. Charter-Medical-Columbia, 393 S.E.2d 914, 916 (S.C. 1990) (citing Hanselmann v. McCardle, 267 S.E.2d 531, 533 (S.C. 1980)). Legal causation is proved by establishing the foreseeability of the plaintiff's injury or damage from the defendant's negligent conduct. Trivelas v. S.C. Dep't of Transp., 588 S.E.2d 271, 276 (S.C. Ct. App. 2001) (citing Parks v. Characters Night Club, 345 S.C. 548 S.E.2d 605, 609 (S.C. Ct. App. 2001)). "An injury is foreseeable if it is the natural and probable consequence of a breach of duty." Parks, 548 S.E.2d at 609 (citing Olson v. Faculty House, 544 S.E.2d 38, 47 (S.C. Ct. App. 2001)).

Generally, proximate causation is a question of fact for the jury. Trivelas, 588 S.E.2d at 276 (citing Ballou v. Sigma Nu Gen. Fraternity, 352 S.E.2d 488 (S.C. Ct. App. 1986)). "Only in rare or exceptional cases may the question of proximate cause be decided as a matter of law." Id. (citing Ballou, 352 S.E.2d at 493 (citation omitted)); see also Small v. Pioneer Mach., Inc., 494 S.E.2d 835, 843 (S.C. Ct. App. 1997) ("The particular facts and circumstances of each case determine whether the question of proximate cause should be decided by the court or by the jury. Only when the evidence

is susceptible to only one inference does it become a matter of law for the court." (citations omitted)).

In professional malpractice actions and claims involving complex medical issues, plaintiffs are required to provide expert testimony to prove causation. See David v. McCleod Reg'l Med. Ctr., 626 S.E.2d 1, 4 (S.C. 2006); Jones v. Owings, 456 S.E.2d 371, 374 (S.C. 1995). However, expert testimony is not required to prove proximate causation "if the common knowledge or experience of laypersons is extensive enough to determine the presence of the required causal link between the medical treatment and the patient's injury." Phillips v. Morbark, Inc., 481 F. Supp. 2d 461, 465 n.2 (D.S.C. 2007) (citing Bramlette, 393 S.E.2d at 916). In general negligence actions, a plaintiff may prove proximate causation with circumstantial evidence. See Gilliland v. Doe, 592 S.E.2d 626, 629 (S.C. 2004); Seaside Resorts, Inc. v. Club Car, Inc., 416 S.E.2d 655, 662 (S.C. Ct. App. 1992); see also Chaney v. Burgess, 143 S.E.2d 521, 523 (S.C. 1965) ("[N]egligence may be proven by circumstantial evidence as well as direct evidence . . . [T]he facts and circumstances shown are to be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates."). In order to do so, the evidence must give rise to a "reasonable inference" that a defendant's negligence caused the injury. See, e.g., Kapuschinsky v. United States, 248 F. Supp. 732, 737–38 (D.S.C. 1966) (drawing a reasonable inference of causation from circumstantial evidence); McQuillin v. Dobbs, 204 S.E.2d 732 (S.C. 1974) (holding that reasonable inferences could be made from the evidence to prove causation); Barnwell v. Elliot, 80 S.E.2d 748 (S.C. 1954) (holding that the fact that an injury could have been caused in more than one

way does not preclude recovery when there is evidence to warrant a reasonable inference of causation).

Corizon argues that Frazier has failed to provide sufficient evidence to create a genuine dispute of material fact regarding whether Corizon's failure to properly screen at least 108 inmates caused Frazier to contract tuberculosis. In support of its argument, Corizon cites the deposition of Dr. Parsons. Dr. Parsons was unable to state to a reasonable degree of medical certainty that Frazier contracted tuberculosis: (1) prior to June 30, 2009; (2) from an inmate that entered CCDC prior to the end of Corizon's contract period; (3) as a result of Corizon's failure to protect Frazier from tuberculosis; or (4) as a result of Corizon's negligence. Def.'s Mot. Ex. G. Therefore, Corizon argues that Frazier failed to present medical expert testimony to prove causation. Id. at 10-14. Corizon argues further that Frazier failed to establish a genuine issue of material fact as to causation. Id. Specifically, Corizon argues that there is no evidence that Frazier contracted tuberculosis from an inmate infected during the Corizon contract period. Id. at 13. Therefore, Corizon argues that there is no evidence that Frazier contracted tuberculosis as a result of any failure of Corizon to protect him from tuberculosis or enact adequate policies and procedures. Id.

In response, Frazier contends that there is sufficient evidence in the record of Corizon's negligent failure to prevent the spread of tuberculosis. Pl.'s Resp. 2. Further, Frazier argues that he is not required to provide direct evidence that Frazier came in contact with an infected inmate whom Corizon negligently failed to screen. Id. Frazier contends that there is ample circumstantial evidence in the record from which a

reasonable jury could conclude that Corizon's failure to properly screen and protect Frazier from tuberculosis caused Frazier to contract tuberculosis.  Pl.'s Resp. 2.

With respect to Corizon's argument that there is no evidence of causation, the court finds that a genuine issue of material fact exists as to the cause of Frazier's tuberculosis.  Frazier is not required to produce direct evidence of causation to survive summary judgment.  See Gilliland, 592 S.E.2d at 629; Seaside Resorts, 416 S.E.2d at 662; see also Chaney, 143 S.E.2d at 523 ("[N]egligence may be proven by circumstantial evidence as well as direct evidence . . . the facts and circumstances shown are to be reckoned with in the light of ordinary experience and such conclusions deduced therefrom as common sense dictates.").

There is ample circumstantial evidence in the record from which a reasonable jury could conclude that Corizon's failure to prevent the spread of tuberculosis caused Frazier to contract tuberculosis.  Dr. Arden testified that Frazier's tuberculosis was more likely than not linked to A.M., hypothesizing that they were together at some point  Pl.'s Objections 3; Arden Dep. 49:18-50:11; 83:25-84:17.  There is evidence in the record that A.M. was infected with tuberculosis while incarcerated at CCDC, that Corizon failed to initially screen at least 108 inmates, and that there were three potentially infected inmates during Corizon's contract period.  Pl.'s Objections 12-13.  There is conflicting testimony as to whether Frazier could have come in contact with A.M. prior to A.M.'s transfer and whether A.M. came in contact with the other unidentified infected inmates.  Although the computer records do not provide direct evidence of contact, Frazier disputes Corizon's reliance on the computer evidence.  Id. at 13.  Frazier presents evidence that the computer system does not document all possible contact between inmates.  Pl.'s Objections 13.

Further, Dr. Arden testified that there were problems with the computer system's recording system during relevant time periods. Id.; Arden Dep. 100:20-101:17, 137:23-25. Further, the lack of direct evidence of contact cannot be construed as direct evidence to absolutely preclude the possibility of contact.

Corizon and Frazier both cite Kapuschinsky. 248 F. Supp. 732. In Kapuschinsky, the parents of a baby infected by a nurse with staph at the United States Naval Hospital brought a negligence action against the government for the hospital's failure to test the nurse prior to allowing her to work in the nursery. Id. at 733–735. There was direct evidence that the nurse had physical contact with the baby; however, such direct evidence of contact occurred after the date of infection. Id. at 737. Frazier cites the case in support of his argument, noting that there was only circumstantial evidence of contact between the nurse and the baby prior to the baby contracting staph. Pl.'s Resp. 10. Conversely, Corizon distinguishes Kapuschinsky from the instant case because there is no direct evidence that Frazier ever had contact with A.M. or the other potentially infected inmates. Def.'s Resp. 2-4. The magistrate judge also distinguishing Kapuschinsky, finding that, unlike this case, the undisputed evidence proved actual contact between the source of the infection and the baby. R&R 12. However, while there was direct evidence of contact in Kapuschinsky, the direct evidence only proved contact after the date of infection. 248 F. Supp. at 737. Based on the circumstantial evidence alone, the court made the reasonable inference that the nurse had contact with the baby. Id. at 738.

To the extent that Corizon's motion rests on Frazier's lack of expert testimony on the issue of causation, expert testimony is not required.[4] Frazier withdrew his medical malpractice action; therefore, the only remaining claim against Corizon is for negligence. Id. Further, this case does not involve complex medical issues. There is no dispute that Frazier contracted tuberculosis at CCDC. Dr. Parsons testified that Frazier contracted tuberculosis through the air, testimony which Corizon does not dispute. Moreover, expert testimony is not required to prove proximate cause "if the common knowledge or experience of laypersons is extensive enough to determine the presence of the required causal link between the medical treatment and the plaintiff's injury." Phillips, 481 F. Supp. 2d at 465 n.2. An ordinary layperson is capable of determining the causal link between Corizon's alleged negligence and Frazier's contracting tuberculosis.

Viewing the facts and inferences drawn therefrom in the light most favorable to Frazier, there is a genuine issue of material fact as to whether Corizon's alleged negligence caused Frazier to contract tuberculosis. "An issue is for the jury if there is sufficient evidence to establish it in the mind of the reasonable juror." Poston v. World Ins. Co., 329 S.E.2d 452, 453 (S.C. Ct. App. 1985) (citing Brave v. Blakely, 157 S.E.2d 726 (S.C. 1967)). Because the circumstantial evidence creates a genuine issue of fact regarding causation for a jury to decide, summary judgment is improper.

---

[4] Corizon argues that Frazier must prove "medical causation" and that expert testimony is required to establish such a causative link. Def.'s Mot. 10. In support of its argument, Corizon cites Mitchell v. Gencorp Inc., 165 F.3d 778, 780 (10th Cir. 1999) and Graves v. CAS Medical Systems, Inc., 735 S.E.2d 650 (S.C. 2012). Mitchell and Graves are not relevant to this action because both were products liability actions. As stated above, expert testimony is not required to prove proximate causation "if the common knowledge or experience of laypersons is extensive enough to determine the presence of the required causal link between the medical treatment and the patient's injury." Phillips, 481 F. Supp. 2d at 465 n.2 (citing Bramlette, 393 S.E.2d at 916). Further, the courts in Mitchell and Graves determined that there was no evidence to prove causation without the expert testimony. Mitchell, 164 F.3d at 784; Graves, 735 S.E.2d at 659. In this action, Frazier provides sufficient circumstantial evidence to prove causation, even without Dr. Parson's testimony.

## IV.  CONCLUSION

Based on the foregoing, the court **REJECTS** the magistrate judge's R&R, and **DENIES** Corizon's motion for summary judgment.

**AND IT IS SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　　　　　　**DAVID C. NORTON**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**September 30, 2014**
**Charleston, South Carolina**